The next case for argument is 18-1491, Straight Path v. Apple. It is true that the server does not know already at the time that it receives the query whether it's connected. Instead, what it does, according to Cole and even their experts, what it does is it checks to determine whether it's connected at that time. It tries to initiate a call. No. With the process, too. No. No? That is the critical difference that the district court absolutely missed, and I'll take you through that. So, it does not try to initiate the call. That is signaling connection. I can show you, with respect to the figure, if you'll allow me. So, if you'll go to 6558 with me. This check to determine, I'll show you, occurs before the IP address is provided and before the point-to-point line is attempted to be established. And that's the critical thing that the district court missed. So, on 6558, we have the figure that shows the Cisco flow diagram. There's a similar one for Apple. This is confidential information. Yes. It's marked. It is not. No. There was a question as to whether it was. They withdrew their objection. It's in the appendix. Can we get some confirmation from Cisco on that? Is that correct? Thank you. So, it's not confidential. Okay. So, on the left, phone 1000 is the caller. In the middle, CCM is the server. And on the right, phone 2000, that's the callee. At line 10, there's a message, invite. It's message 1. You see 1 in brackets. Hit invite. That is the query from the caller to the server that Mr. Cole testified is the query as to whether it's connected at the time of the query. In response to that, the server sends messages to the callee. That is message 11 that you see around line 16. That causes the phone to ring. And if the callee answers, a 200 OK comes back. Okay. Okay. So, it's indicating it causes the phone to ring. No. No. It causes the phone to ring. But at this point in time, it is undisputed, Your Honor, and this is critical, that there is no point-to-point line established. When the callee picks up the phone and answers, the caller and callee are not connected. At this point... I understand. When the person answers, then it says, okay, you answered. That means you must be online. That's right. And the server determines that you're online at that point. And then and only then, in the message 17, 200 OK, does the server provide the IP address to the caller, which the caller then uses at line 22 to establish the media cut-through. That media cut-through is the point-to-point line that the caller is establishing with the callee. That's what carries the voice. That's the media line not mediated. Sorry to interrupt you. Where is the last step? I was with you at number 15, which is 200 OK. Yes. What was the next step that you referred to? The next step... Because this is very helpful, so thank you. Thank you. Upon receiving the 200 OK message 15, the server determines that the callee is online, was online at the time of the query. Then and only then, it sends, the server sends message 17 at line 21. That's the 200 OK. That 200 OK is what contains the IP address for the callee. And only then can they connect directly, which carries the voice. All of this is absolutely transparent to the person, the caller and callee, but that's what's happening behind the scenes. So if you look at the page 6557, the triangle diagram, this shows caller A, caller B, and the server in the middle is the call. The two legs are signaling connections. Those are the set-up signaling. And the media line is what happens between A and B. That's the media cut-through. And so everything that occurs up to message 15 is set-up signaling with the server. They're not connected yet. And then, and only then, does the server provide the IP address so that they provide the media cut-through. This is the critical point that the district court just missed. He thought that the call was connected when the person picks up the phone. This is the difference between the prior ART and the accused products. In the prior ART, both systems have registration databases. But in the prior ART, when there was a query, is it registered, WINS and NetBIOS, which were the prior ART references, provided the IP address. They didn't do anything else. They didn't check online status, and so they didn't answer the question, is it connected at the time of the query. That's the difference. The accused products both check to determine that the callee is still online, that it was online at the time of the query, before providing the IP address. By calling the person. That's right. By ringing the phone, that's all signaling with the server only.  This invention is to establish the point-to-point call where you have two endpoints with dynamic IP addressing. Dynamic IP addressing means every time you connect, you get a different IP address. So if I want to call you, Your Honor, I don't know your IP address. I need the server to tell me. But before the server gives me your IP address to call, the invention is to make sure that you're actually online. And this is all supposed to be happening at the same time. Time was the underpinning for the claim construction and for allowing your claims to be held. The time of what's determined, what is required. There is a temporal requirement, but the temporal requirement is determining that the callee was online at the time of the query. It's not determined. Is online at the time of the query. Is online at the time of the query. It's not requiring when that determination is made or how that determination is made. And the record is actually clear that how that determination is made, how the server determines that. You're saying it's okay if it's a retroactive determination or the determination that occurs later so long as it's retroactively accurate? As long as it's retroactively determining the right thing. Well, how does that comport with… That it was online at the time. You know, among other things we said in our SIP net case, the present tense is in is connected to the computer network. Plainly says that the query transmitted to the server seeks to determine whether the second unit is connected at that time. I.e. connected at the time the query is set. That's right. So the question is supposed to be answered at the time. The question is, what the query requires is, is it connected at the time of the query? And Mr. Kolb explained that the system queries for that and determines not only that it is connected at the time of the query, but it actually has been connected from just before that to just after that. It is answering the right question. When the query is made, that's when the communication is sought. One of the things that I read, and I can't remember if it was in the patent or in your expert's testimony, is that the whole purpose of this invention is to make sure that there's no actual connection prior to an incurring of charges, for example. And that's why you want to go ahead and make sure that the colleague is online. That's right. That's why you have this check. And this does that. When you're calling the colleague in order to actually see if the colleague is online, how is that purpose satisfied? Okay. The server is sending signaling messages, which are cheap and easy, to the colleague. What is difficult and what is saved is trying to establish that media connection, that media cut-through, that point-to-point connection. And while Apple says we have false registrations and there are billions of times that the server tries to connect to stale IP addresses, none of those stale IP addresses are provided to the caller device. My phone never tries to reach out, is never given a stale IP address, and never tries to establish a connection, a point-to-point connection, with the stale IP address. But it does try to establish an indirect connection. I mean, at least it goes to the server and then establishes a connection. The server does, but this is critical because... Right? I'm sorry. The server establishes a connection and calls. No. No. The whole point of this is to use a server to help the caller and colleague establish an unmediated media connection. That's the point-to-point. Can you point to me in your specification where this is disclosed, all of this, and where the purpose of the invention is disclosed? Because I read your specification and I see where, you know, you've got that database environment and embodiment that's disclosed, but I don't see a whole lot else about this claimed invention in the specification. What the specification is primarily aimed at is helping to establish a point-to-point connection where you have dynamic IP addresses. Okay? The isConnected was not specifically drawn out as the benefit of that. I don't think that's specifically disclosed here. That came out in the process of distinguishing the prior art in the IPRs and in the subsequent appeals. And the benefit, we have to look at the claim, and the claim is issuing a query for isItConnected and doing that before providing the IP address. Do you have an embodiment disclosed in which the query is accomplished by doing something other than looking at a database? So there is the secondary protocol, Your Honor. And that secondary protocol is described at column six, starting at lines 17. And if you look at line 55, this is the mail server. Should I look at a particular version? I know that you have multiple patents. I'm looking at the 704. Okay. The 704, column six, line 55. The mail server then pulls the second processing unit, for example, every three to five seconds to deliver the email. So that embodiment was specifically discussed, acknowledged by the CFNET court before finding plain and ordinary meaning. There is no clear and unmistakable disclaimer of anything that didn't have a database. In fact, Mr. Wodarski in Judge Prost's panel that issued the Samsung opinion specifically says not all embodiments describe the, require checking a database. There's this colloquy with Judge Dyke in the CFNET case. I'm sorry? There's this colloquy with Judge Dyke and counsel in CFNET. Sure, but there's never, but there's never. Always checking. Yes, but there's never. And in that case, they were discussing why the prior art, which only checked a database and didn't do anything more, was different than the embodiment in the specification, which has an accurate database. And they said the difference there is if you're only checking a database, it's got to be accurate. You have to check. You have to track. But then your honors opinion in Samsung specifically embraced not only that the prior art, that the plain meaning is right, but specifically embraced that it includes tracking or checking to determine. Right? So the Samsung opinion, it's in our appendix at 373073. Judge Proh's opinion is the board's determination is supported by substantial evidence, Straight Path argues, because, quote, not only is the prior art not designed to keep track of current online status, it is not designed to check online status when responding to a query for a user's IP address. We agree with Straight Path. There is no limitation in the claims for a database. The database is not even recited in any of the asserted claims. There is no limitation in the claims as to how the server makes the determination. What's required is that the query be to the server, and when responding, the server check that it is online, that it was online at the time of the query, before providing the IP address so that the caller device is not trying to establish this expensive point-to-point media cut-through with a stale IP address. Okay. We're way over time. We'll restore a summary battle. Let's hear from the other side. Ms. Stetson, you're up first. Thank you, Your Honors. May it please the Court. I'm Kate Stetson. I'm arguing for Apple today, and I'm splitting my time with Mr. Damaris. I want to start where my friend on the other side started, because I think there are a few words in the claim construction that this Court offered that have dropped out of the colloquy a little bit. The claim construction that this Court arrived at in straight path in the SIPNAT case is a query as to whether the second process is connected to the computer network, means is connected to the computer network at the time that the query is transmitted to the server. The temporal element of that, I think, has been what's been lost here. The new argument that you're hearing today is that despite the entire way that this case was framed the last two times it has come up to this Court, now the argument is it's okay if a system doesn't track registrations as long as it can check something. And these two inventions, straight path contends, check something. Can you speak up just a little bit? Certainly. Thank you. They check something by calling the callee device, sending an invite push, and asking that callee device, this is the Apple system now, asking that callee device, would you like to take this call? Only if the answer to that question is yes, by the callee picking up the call, does the server, quote unquote, determine that the callee is online. So let's say the callee decides, hey, I just don't have time right now to take this call. Then the server would think that the person's offline? The server, nothing would come back to the server in that instance. And that's one of the problems here, is that the question that is being posed to that callee device is not, are you online? Just as you said, Judge Stoll, there could be many circumstances. The server doesn't care if you're online or offline, it's just calling. The server does not care if you're online. Is there any evidence at all in Apple's documents that was brought forward that said anything about that invite message, the purpose of it being to determine whether the callee is online? No. The invite message is an invitation to join a call. And you heard my friend on the other side actually said a couple things in his colloquy with you that goes right to this point. The server, when it makes that invite push in the Apple system, and this is a quote, the server does not know already whether that callee is online or not. When the callee answers and that message is transmitted back, that is the point, according to Straight Path, where the server determines that the callee is online. But I think, Judge Stoll, you also made the point that there's not a site in the expert's recitation at page 6611 for this idea that... It seems to be an inherency kind of argument, I guess, that, well, of course, if you call the person and they answer, then you must know they're online. Yes. And I think that's why, I think the phrase the district court used to describe that was astonishingly overbroad. It's also the wrong question. The question is not, are you willing to accept my call? The question is, are you online? But the important thing here, I think, too, is at page 6611, what Straight Path's expert says is, because of this series of messages that we've been talking about, when that callee picks up that call and signals that she's online, then the server determines that the callee is online at the time the query is transmitted to the server. And that is completely unsupported by anything in the record. At that point, your adversary's argument is that when the person picks up and the response is sent back to the server, then the server is told, at the time of your query, I was online, because I'm online now, several seconds later, even a minute later, so I must have been online before. I think that's what his argument is. I think that is. The problem is that that runs straight back into the claim construction that this court offered in SitNet. The query has to be, and this is the phrase that the panel used, calling for present status information. At the time the query is transmitted to the server, what is the present status of this person? Not, is this person going to be online in a few seconds? Is this person going to pick up the phone in 30 seconds after it rings for a while? What is the present online status of this person? Now, this whole question about tracking versus checking, which has become now the focus of StraightPath's argument this third time up, I think is a red herring precisely for the reasons we've been talking about. But more importantly, when we talk about tracking versus checking, there are a couple points, I think, on which we would agree with StraightPath. The checking the database, what Mr. Wodarski, StraightPath's counsel, said in the earlier argument, is that you don't need, perhaps, a database. This is a Joint Appendix 7205. But you do need some way to constantly keep track of status. And what he said was constant pinging, constant checking. So you may not need a memory such as a database, which is the way that Patent frames this. But the server has to have the capability to know, at the time the query is transmitted to the server, whether someone is or is not online. Not whether someone chooses, at some subsequent point in time, 20 seconds later, to pick up a call. Because that is the wrong question. Do you know how the prior art worked? The prior art that they were attempting to distinguish during the IPR? How did that work? I mean, it had a database that had, I guess, old data in it, not exactly current, relatively current data. So what did it do after that step? Do you know? Did it try to initiate a call? Yes, is the short answer. And you can actually find this in the Samsung opinion. So this is 696 Federal Appendix, page 1012. It discusses both the WINS and NetBIOS systems. And one of the points that the Samsung opinion makes is, in each system, once the registration database is checked, which is what happens in Apple's system as well, once the IP, and I'm quoting now, addresses have been found for a target name, a NetBIOS session service begins. The NetBIOS session service involves directed point-to-point communications. And so too with the WINS network. So this whole kind of fiction that NetBIOS and WINS were just about checking registration databases is not accurate. Those were recitations that this court drew from the PTAB proceedings that preceded that particular opinion. So the difference here, I think, is, and this is an observation a prior panel member made to StraightPaths counsel, what StraightPaths counsel was able to preserve is very, very narrow. What StraightPaths counsel was able to preserve against a challenge of obviousness was this idea that when a caller asks a server, is the callee online at the time of my query, the server has to know the answer. The server can check a database. The server can constantly ping all of the registered devices. But the server has to know the answer, not at some point 30 seconds later. Thank you. Thank you, Your Honors. May it please the court, John Damaris for Cisco. With respect to the Cisco system, this case is very straightforward based on the admissions that StraightPaths expert Cole made. First, Cole admitted that Cisco's servers have stale IP addresses. There's no dispute about that, just like the NetBIOS and WINS system. Second, Cole admitted that at the time of the query, which is the claim construction, which is the language, at the time of the query, Cisco's servers do not know if the called phone is online. Lastly, Cole admitted that the 200 OK message that they rely on as a response to the query didn't even exist at the time of the query. The claim language requires an answer at the time of the query. The 200 OK message didn't even exist at that time. And Cole admitted that that 200 OK message is not even created. It doesn't even come into existence until they answer the phone. How do you respond to your adversary's argument that at the time the query of the query language refers to when it's connected? In other words, that the answer to that question can be answered later, 30 seconds later. And you know from the fact that it's connected 30 seconds later that it must have been connected 30 seconds earlier at the time of the query. There's a couple answers to that. Number one, the language of the construction defeats that argument entirely because when you look at the construction, it says at the time that the query is transmitted to the server. So the query going from the server is from the calling phone to the server. That's the query time. And that happens, the claim construction requires you to have an answer at that time when that query gets to the server. You can't figure it out and apply the answer retroactively, retrospectively. Well no, it doesn't even work in this case retrospectively because they have no proof that just because somebody answered the phone that they were online earlier. It happens all the time in these systems where people go offline and online. As long as they're online when the phone starts to ring, it doesn't mean they were online at the time the query went to the server. They have no proof of that. They're relying entirely on their expert's inference which isn't based on anything. But if you think about just stepping out practically, think about what they're actually arguing here. He took you through the call flow in the appendix. What's happening there in the Cisco systems? These are telephones. These are regular handsets with numbers. They're arguing that because you dial that phone, because somebody on their other side hears the ring and picks it up, that that is somehow answering a query as to whether you're online. It doesn't even make any sense. What the invention was about is you're supposed to know before you make the call to the callee phone, as your honor said, so that you could save the resources. Where will I find that in the record? What you just said. That's in Dr. Cole's testimony and it's also in the district court's opinion. I saw it in the district court's opinion, but I don't see it in the specification. Yeah, it's not in the PAT. Their expert said it. You won't find it in the PAT, but you'll find it. Do you have a site for Cole's testimony? I do. Yes, your honor. I did. Give me a moment. I'll come back to it because there's another point I want to make. I will get you the site. The reason why the Cisco system, the way the setup goes where you're answering the phone cannot be a query. If you think about how that system works, a person who wants to make a call picks up the phone and dials the numbers. That then goes out and goes to the database and gets an old, stale address and then tries to make the call. Four things can happen at that point. The address is wrong and the call doesn't get made. The phone rings, but nobody's there to answer it. Or you're home and the phone's ringing and you decide you don't want to pick it up. Or you pick it up and answer. It's only in that last option where you pick up the phone and answer that the 200 OK goes back. In all those other scenarios where if it's a stale address or if the phone rings and nobody answered it or somebody chooses not to, there's no 200 OK go back. That's not an answer to a query of whether you're online because you are online in two of those scenarios where you don't answer the ringing phone. And you're offline when the address is wrong. But none of that information goes back to the server. This is not what the invention is about. This invention was about finding out if somebody is online at the time you make the call. And in particular, if you look at the things that the plaintiff said in the prior litigations here with respect to tracking, this is from the SIPnet briefing that went up to this court. They said the claimed query to determine whether a process is currently connected to the computer network at the time of the query requires the connection server to perform at least a two-step protocol. Requires, they said, to track when the process connects to the computer and when the process disconnects to the computer. Without performing that second step, the connection server could not know whether a process had gone offline and could therefore only determine whether the process had at some point been connected to the network. Not whether it was currently connected at the time of the query and thus available for the desired point-to-point communication. And they've said that over and over again. Their system tracks whether you're on or offline prior to anyone trying to make a call. Would you read the requirement of having a database into the claim? Or would you say it doesn't matter how you do it, but it has to be real-time right now? It can't be performed through a call to the callee? That's a good question, Your Honor. I would not have read it into the claim as a matter of claim construction. But on the database, what they said to this court was crystal clear. They said in the SIPnet argument, oral argument, it's to confirm that it's online at the moment and it's online at that address. So you see, it has to look at the database at that moment and it has to be able to make a binary decision. This is what they said to this court. They said it has to have a database and it has to make a binary decision. But that was in the context of a particular prior that was using a database. Isn't that right? No, they said it with respect to the patents. If you look, here's the next quote. The binary decision has to, so this is counsel for SREPA. The binary decision has to be made by the server then because it takes the connection server under the patents, is required to do different things upon the decision and the determination at that time. They go on to say, to a question from this court, is the difference in your invention, not in your embodiment, in your invention, that the database has to be updated when somebody logs off? Answer, absolutely. And I say that for two simple reasons. One is it requires it and that's the actual language used by the patentee. This is what they said. The next thing, the court then asks another question. So when you view the database, it must always be accurate and that's the difference between your invention and the prior art. Correct? Answer, that is correct. But that's referring to the prior art, right? I mean, it is referring to the prior art. I think you could win under either theory, whether it's that it has to have a database in the claim or it's that it has to be something that is, where it knows the status at the time of the query. Yes, I'm not necessarily saying that we should read database into the claim, but what I am saying is from those comments and from what the claim construction is, that server needs to know at the time the query comes in, whether the person it's going to then try to call is online or offline. When you look at the prior art, the WINS and NetBIOS, they operate exactly the way Cisco did. They have stale information in the database and then when somebody calls into the database, they use that information to reach out to the caller. And then if they find the caller, just like the Cisco system, they connect the call. It's exactly what we do. Okay, we're out of time. Do you have the citation? Yes, give me one second. Do you have it? Yeah, thank you. Thank you for asking. It's appendix site 4694. Thank you. Thank you very much. Thank you. Your Honors, let's start with the claim language because there's been a lot said about whether the determination has to be made or whether it's a query as to whether it was connected at the time. The claim language says, this is 704 Claim 1, code for transmitting to the server a query as to whether the second process is connected to the computer network at the time the query was transmitted. What you're asking for is whether it was determined, whether the callee process was connected. And Your Honors, I'll take you back to 6577. Cole testifies that the server determines not only that the callee endpoint was online at the time the query was transmitted, but it actually determines that the callee endpoint was online throughout that period. You have to credit that testimony. He explains it. If you look at paragraph 16, he explains that the reason you know that is because I had a registration and I know it was online at the registration. When I send the invite, the check to determine, the server sends the check to determine, it can only receive it if it's still connected at that address. How do we know it's still connected at that address and has been throughout the time? Because these are dynamic IP addresses. If it had disconnected, it would now be at a different IP address. He explains that rationale. So he explains that the server determines that the callee process was online at the time of the query, which is exactly what this court's claim construction requires. And it does that before providing the IP address and before the caller attempts to establish the actual call, which is the unmediated point-to-point call. We have to be precise, Judge, about what the call is. And you asked a question, Judge Stoll, about whether, but does the WINS NetBIOS attempt to place the call? Your Honor, I beg you, be precise about the language and use the claim construction, the claim language, which is talking about the point-to-point line that's being established. What is the answer to that question, though? I didn't ask you that question. The answer to that is the key to this whole thing, which is in WINS NetBIOS, there's a query to the server, and the server returns a stale IP address, and then the caller tries to use that stale IP address to connect to the callee. That's the prior art. It's not the server that tries to initiate the call. No, no. That's how you're distinguishing it. That's right. It's the caller. And the whole point of this, if you look at the last step of Claim 1, it's the program code responsive to the network protocol address for establishing the point-to-point communication link. That's the code in the caller process connecting to the callee process. So the difference is that in the WINS NetBIOS prior art, it returned the IP address that was stale, and here the server checks to determine that it's online and was online at the time of the query before providing the IP address, whereas the prior art provided stale IP addresses for the caller to use to try to establish that call. The accused products never do. Okay. We're out of time. Thank you. Thank you very much. We thank both sides, and the case is submitted.